SO ORDERED.

SIGNED this 21st day of May, 2026.



Dale L. Somers
United States Chief Bankruptcy Judge

_Designated for online publication_
**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **In re:** | |
| **Lane Andrew Patmon and Amy Elizabeth Patmon,** | **Case No. 24-40496** <br> **Chapter 12** |
| **Debtors.** | |
| **Agrifund, LLC,** | |
| **Plaintiff,** | |
| **v.** | **Adversary No. 25-7018** |
| **Lane Andrew Patmon and Amy Elizabeth Patmon,** | |
| **Defendants.** | |

Lane Andrew Patmon and Amy
Elizabeth Patmon,

       Third-Party Plaintiffs,

v.

Sandhills Global, Inc. d/b/a
AUCTIONTIME.COM, Omaha
Creek Trailer Sales, Inc., and
Beau Barclay,

       Third-Party Defendants.

---

Agrifund, LLC,

       Cross-Plaintiffs,

v.

Sandhills Global, Inc. d/b/a
AUCTIONTIME.COM, Omaha
Creek Trailer Sales, Inc., and
Beau Barclay,

       Cross-Defendants.

## <u>Memorandum Opinion and Order Granting Sandhills' Motion to Dismiss Debtors' Third-Party Claims</u>

The plaintiff in this adversary proceeding filed a dischargeability complaint against Lane and Elizabeth Patmon (collectively, the "Debtors"). The Debtors subsequently filed a third-party complaint against Sandhills Global, Inc. d/b/a AuctionTime.com ("Sandhills" or "AuctionTime") and other parties. Sandhills moved to dismiss the third-party complaint against it. For the following reasons, the Court grants Sandhills' motion.

## I. Background and Procedural History

In early February 2024, Lane Patmon ("Patmon") placed a call to AuctionTime's 1-800 phone number to discuss an internet auction sale of certain pieces of farm machinery and equipment. AuctionTime is an online auction platform that connects buyers and sellers of heavy machinery and equipment. A person at AuctionTime's main office then reached out to Beau Barclay ("Barclay"), a field representative and owner of Omaha Creek Trailer Sales, Inc. ("Omaha Creek"), directing him to respond to Patmon. Barclay contacted Patmon to set up a meeting and subsequently drove to Patmon's farm to discuss the details of the sale.

On or about February 21, 2024, Patmon and Omaha Creek entered into an Online Auction Listing & Marketing Agreement (the "Agreement"). Under the Agreement, Patmon authorized Omaha Creek to market and sell certain pieces of equipment. According to Patmon, he later advised Barclay about some misinformation in the online descriptions of the equipment, but Barclay did not remove the advertising.

In March 2024, an auction took place during which the listed items were sold to third party buyers and Barclay. Multiple disputes arose over the distribution of the sale proceeds and release of the equipment sold. Patmon and his wife filed their Voluntary Petition under Chapter 12 on July 23, 2024.

The Adversary Proceeding[1]

---

[1] Two other adversary proceedings related to the auction are pending in this bankruptcy case: Nos. 24-07011 and 24-07016.

On May 20, 2025, Agrifund, LLC ("Agrifund") filed a Complaint against the Debtors under § 523(a)(2), (a)(4), and (a)(6) to determine the dischargeability of the debt owed to Agrifund.[2] In 2023, the Debtors had executed a promissory note and loan agreement in favor of Agrifund. The loan was secured by the Debtors' farm products, inventory, equipment, and intangibles (subject to a few exceptions).[3] Agrifund contends the Debtors did not inform Agrifund of the auction sale nor did they obtain Agrifund's consent to release its liens on the auctioned equipment. Agrifund asserts a senior priority lien on the excess sale proceeds and argues the Debtors' conversion of Agrifund's collateral was done with fraudulent intent.

In their Answer, the Debtors deny most of the allegations and include a Third-Party Complaint[4] against Omaha Creek, Barclay, and Sandhills, bringing the following actions against them (collectively, the "Debtors' Claims"):

> Count I – Breach of Contract
> The Debtors assert Omaha Creek, Barclay, and AuctionTime breached the covenant of good faith and fair dealing when they misrepresented the condition of the machinery and failed to correct the advertising after Patmon brought it to their attention.
>
> Count II – Conversion
> The Debtors allege Omaha Creek and Barclay misappropriated the sale proceeds for their own use. They assert those actions were willful and committed with malice or reckless disregard for the rights of Patmon and his creditors. The Debtors contend AuctionTime is vicariously liable for the actions of Barclay and Omaha Creek.

---

[2] Doc. 1.

[3] The Debtors subsequently executed a modification agreement, assignment agreements and a subordination agreement in connection with the debt; those details are not relevant to the motion before the Court.

[4] Doc. 6.

Count III – Breach of Fiduciary Duty
The Debtors argue Omaha Creek and Barclay have commingled the sale proceeds with personal and/or business funds; the proceeds were trust funds and Omaha Creek and Barclay had a fiduciary duty to turn them over to Patmon and his creditors. They also claim AuctionTime is vicariously liable for the wrongful acts of Barclay and Omaha Creek, its agents.

Sandhills' Motion to Dismiss

On September 9, 2025, Sandhills filed a motion to dismiss the Debtors' Claims against Sandhills and dismiss Sandhills as a third-party defendant from this adversary proceeding (the "Motion").[5] Sandhills' position can be distilled into the following alternative arguments: 1) the Debtors' Claims have been brought in an improper venue and should be dismissed based on the doctrine of *forum non conveniens*, and 2) the Third-Party Complaint should be dismissed under Fed. R. Civ. P. 12(b)(6) because the Debtors fail to state claims upon which relief can be granted. Because the Court concludes dismissal is appropriate based on the former, the Court need not reach the latter.

Sandhills' Motion centers on the Terms of Use found on its website. Sandhills utilizes clickwrap terms of service to govern users' access and use of the computer server.[6] According to Sandhills' Chief Operations Officer, Patmon first registered

---

[5] Doc. 19. Sandhills erroneously characterizes the Third-Party Complaint as being filed solely by Lane Patmon when in fact it was filed by both Lane and Amy Patmon.

[6] A "clickwrap agreement" is a digital contract where users explicitly indicate their consent to terms and conditions by performing an affirmative action, typically involving clicking a button labeled "I Agree" or checking a box to confirm acceptance. *What Is a Clickwrap Agreement and Is It Enforceable?*, Legal Clarity (Aug. 17, 2025), https://legalclarity.org/what-is-a-clickwrap-agreement-and-is-it-enforceable/. This type of agreement is ubiquitous today.

with the AuctionTime site on August 3, 2021, and would have accepted the Terms of Use then.[7] Each time Patmon logged in, he necessarily agreed to them.[8]

The following language appears prominently at the start of the Terms of Use:

> **THESE TERMS ARE A BINDING CONTRACT BETWEEN YOU AND SANDHILLS. PLEASE READ THEM CAREFULLY.** BY ACCESSING AND USING OUR SITES AND SERVICES, WHETHER AS A VISITOR, BIDDER OR SELLER, YOU CONFIRM YOU HAVE READ, UNDERSTOOD AND AGREE TO BE BOUND BY THESE TERMS. WE RECOMMEND THAT YOU PRINT A COPY OF THESE TERMS FOR FUTURE REFERENCE.[9]

Most relevant to the Motion is the Term of Use's forum selection clause (the "FSC") stating "[a]ny disputes arising out of the General Terms of Use are subject to the exclusive jurisdiction of the courts of Lancaster County [Lincoln], Nebraska, USA."[10] The question before the Court is whether the FSC is enforceable.

## II. Analysis

### A. The adjudication of the Debtors' Claims is not a core proceeding so the FSC is enforceable.

Bankruptcy judges are authorized to hear and determine all bankruptcy cases and "all core proceedings arising under title 11."[11] The term "core proceedings" is statutorily defined and includes matters concerning the

---

[7] Declaration of Evan Welch, attached to the Motion.
[8] *Id.*
[9] *Id.,* Exh. A (capitalization and bold in original).
[10] *Id.*
[11] 28 U.S.C. § 157(b)(1).

6

administration of the estate.[12] A matter that has no existence outside of bankruptcy is a core proceeding.[13] Conversely, "[a] proceeding is non-core if it does not invoke any substantive right under federal bankruptcy law and in the absence of bankruptcy, could have been brought in a District Court or state court."[14] And simply because the bankruptcy estate has the *potential* to recover funds as a result of an adversary proceeding does not render the proceeding "core."[15]

Bankruptcy courts also have jurisdiction over related proceedings.[16] The widely accepted definition of a "related to" proceeding was articulated by the Third Circuit Court of Appeals in the *Pacor* case[17] and adopted by the Tenth Circuit Court of Appeals in the *Gardner* case.[18] Under this test, a "related to" proceeding is one where "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy."[19] On the other hand, the mere fact there may be common issues of fact between a civil proceeding and a controversy

---

[12] 28 U.S.C. § 157(b)(2)(A)-(P).

[13] *Gardner v. United States* (*In re Gardner*), 913 F.2d 1515, 1518 (10th Cir. 1990).

[14] *In re Dynamic Drywall, Inc.*, No. 15-5005, 2015 WL 4497967, at *3 (Bankr. D. Kan. July 21, 2015) (citations omitted).

[15] *Montoya v. Curtis* (*In re Cashco, Inc.*), 614 B.R. 715, 720 (Bankr. D.N.M. 2020). *See also Hayim v. Goetz* (*In re SOL, LLC*), 419 B.R. 498, 506 (Bankr. D. Fla. 2009) ("[A] matter cannot be deemed core merely because the debtor holds a claim, which, if successful, could increase the assets of the estate."); *Peterson v. 610 W. 142 Owners Corp.* (*610 W. 142 Owners Corp.*), 219 B.R. 363, 372 (Bankr. S.D.N.Y. 1998) (that the plaintiffs may recover a portion or all of any judgments against the defendant from insurance proceeds does not transform this otherwise non-core, related-to adversary proceeding into a core matter).

[16] 28 U.S.C. §§ 157(a), 1334(b).

[17] *Pacor v. Higgins*, 743 F.2d 984 (3d Cir. 1984) (partially overruled on other grounds).

[18] *Gardner*, 913 F.2d at 1518.

[19] *Pacor,* 743 F.2d at 994. *See also In re Preston*, No. 18-41253, 2021 WL 560118, at *2 (Bankr. D. Kan. Feb. 8, 2021).

7

involving the bankruptcy estate does not bring the matter within the scope of the bankruptcy court's "related to" jurisdiction.[20]

Courts have routinely declined to enforce forum selection clauses in core proceedings.[21] Thus, one of the keys to the issue of whether the FSC should be enforced is the characterization of the Debtors' Claims as either core or non-core.[22]

Sandhills contends the Debtors' Claims do not arise under title 11 and their resolution does not require the interpretation or enforcement of bankruptcy law-- therefore, the claims are not core and lack the connection to bankruptcy sufficient to confer this Court's jurisdiction. Sandhills admits the Debtors' Claims may "conceivably" have an effect on the bankruptcy estate to a limited extent as any recovery of monetary damages against Sandhills could be used to pay creditors; however, that is the extent of the connection. For these reasons, Sandhills asserts, enforcement of the FSC is appropriate.[23]

The Debtors argue this is a core proceeding under 28 U.S.C. §157(c)(2)(O) because their claims affect liquidation of the assets of the estate. Further, they assert the Debtors' Claims arise in the context of two adversary proceedings, both

---

[20] *Safeco Ins. Co. of America v. Farmland Indus., Inc.* (*In re Farmland Indus., Inc.*), 296 B.R. 793, 804 (B.A.P. 10th Cir. 2003).

[21] *See, e.g.*, *Kurz v. EMAK Worldwide, Inc*, 464 B.R. 635, 641 (D. Del. 2011) (concluding that forum selection clauses are unenforceable when the state action falls within a bankruptcy court's core jurisdiction); *Access Care, Inc. v. Sten-Barr Network Solutions, Inc.* (*In re Access Care, Inc.*), 333 B.R. 706, 713 (Bankr. E.D. Pa. 2005) (forum selection clause enforced even when it was "debatable whether any of Debtor's claims fall within the bankruptcy court's 'core' jurisdiction.").

[22] *See In re D.E. Frey Group, Inc. v. FAS Holdings, Inc.* (*In re D.E. Frey Group, Inc.*), 387 B.R. 799, 807 (D. Colo. 2008) (public policy against transferring core proceedings pursuant to a forum selection clause is only one factor and should not be given controlling weight).

[23] Doc. 19, Memorandum at 10-11.

deemed core matters, and the claims in those proceedings cannot now be deemed non-core. Thus, the FSC should not be enforced.[24]

Both the Debtors and Sandhills cite *In re Cashco* to support their respective positions.[25] In that case, a class-action suit was filed against the debtor in state court before the debtor filed bankruptcy. The state court imposed monetary sanctions against the debtor and they were deposited into the court's registry.

After the bankruptcy filing, the trustee asserted claims for legal malpractice and breach of fiduciary duty in the state court against the attorneys who previously represented the debtor. The attorneys removed the case to the bankruptcy court – initiating an adversary proceeding – and filed a motion to dismiss. The trustee moved for remand to state court. The defendants objected on the grounds that the adversary proceeding was a core proceeding under § 157(b)(2)(O) because the outcome *could* affect the liquidation of assets. The court disagreed, reasoning that the potential of a recovery was insufficient to characterize the proceeding as core.[26]

Additionally, the attorneys argued because their defense implicated issues concerning property of the estate, the entire adversary proceeding was core. The court rejected that argument also. It acknowledged that "an otherwise non-core proceeding can become core when a defendant's core counterclaim involves facts inextricably intertwined with the plaintiff's claims."[27] It distinguished this case,

---

[24] Doc. 28.
[25] *Cashco*, 614 B.R. 715.
[26] *Id*. at 720.
[27] *Id*. at 722.

however, because 1) the attorneys had not asserted a claim against the estate,[28] and 2) whether the sanctions in the registry constituted estate property was not dependent on the facts necessary to adjudicate the state court claims. The court concluded "[t]he Trustee's claims are merely 'related to' the Debtor's bankruptcy case because the outcome of the adversary proceeding could conceivably have an effect on the bankruptcy estate."[29] That is, the claims were related to the bankruptcy proceeding and were not core.

In the instant case, while the Debtors' Claims arise from the same transaction on which this adversary proceeding is based, Sandhills' argument that the Debtors' Claims are non-core is persuasive. The Debtors' Claims are based on state law. Sandhills has not filed a claim against the bankruptcy estate nor has it filed an affirmative defense that requires bankruptcy expertise. The benefit to the estate is speculative. As the Tenth Circuit BAP put it: "Their claim lacks an anchor to bankruptcy law sufficient to confer core jurisdiction...."[30] At most, the Debtors' Claims could be characterized as related proceedings.

Likewise, the Debtors' argument that their claims against Sandhills fall under 28 U.S.C. § 157(b)(2)(O) as a core proceeding affecting the liquidation of the

---

[28] Whether the defendant filed a proof of claim is a significant part of the core/non-core analysis. *See e.g.*, *Statutory Comm. of Unsecured Creditors v. Motorola, Inc.* (*In re Iridium Operating LLC*), 285 B.R. 822, 830 (S.D.N.Y. 2002) (citations omitted) (filing a proof of claim invokes the core jurisdiction of the bankruptcy court).
[29] *Id.*
[30] *In re Houlik*, 481 B.R. 661, 674 (B.A.P. 10th Cir. 2012).

10

assets of the estate is not compelling. As Sandhills notes, courts have rejected that argument. In the words of one such court:

> We decline, however, to give such a broad reading to subsection 157(b)(2)(O); otherwise, the entire range of proceedings under bankruptcy jurisdiction would fall within the scope of core proceedings, a result contrary to the ostensible purpose of the 1984 Act.[31]

In short, the Debtors have not demonstrated their claims against Sandhills are core and therefore invoke this Court's jurisdiction. The Court, therefore, rejects their argument that the FSC is unenforceable on those grounds.

### B.      Enforcement of the FSC does not violate public policy.

When considering a typical dismissal motion based on *forum non conveniens*, the court weighs various private and public interest factors to determine whether dismissal would serve the convenience of the parties and otherwise promote the interest of justice.[32] The existence of a forum selection clause changes the calculus; a court considers the public-interest factors only.[33] The Court will now address the public interest and policy factors raised by the parties.

---

[31] *Wood v. Wood* (In re Wood*)*, 825 F.2d 90, 95 (5th Cir. 1987). *See also Baum v. Baum* (*In re Baum*), 638 B.R. 748, 753 (Bankr. E.D. Mich. 2022) (interpreting § 157(b)(2)(O) broadly would essentially make a core proceeding out of any pre-petition state law claim asserted by a bankruptcy debtor); *Mugica v. Helena Chemical Co.* (*In re Mugica*), 362 B.R. 782, 788 (Bankr. S.D. Tex. 2007) (declining to give a broad reading of § 157(b)(2)(O)).

[32] *K.R.W. Construction, Inc. v. Stronghold Eng'g, Inc.*, 598 F. Supp.3d 1129, 1143 (D. Kan. 2022). Though Sandhills' uses the doctrine of *forum non conveniens* and "improper venue" interchangeably and does not specifically refer to Bankruptcy Rule 7012 in this context (dismissal for improper venue), the analysis is virtually the same under both theories. *See, e.g., Lofstedt v. Nebraska Bank* (*In re York*), No. 25-01317, 2026 WL 729815 (Bankr. Colo. March 13, 2026).

[33] *Atl. Marine Constr. Co. v. United States Dist. Court*, 571 U.S. 49, 62-3 (2013); *K.R.W. Construction, supra.*

11

### 1. Forum selection clauses are *prima facie* valid because they protect the parties' expectations.

Historically, forum selection clauses were found to be contrary to public policy and, therefore, unenforceable.[34] In the widely-cited *M/S Bremen v. Zapata Off-Shore Co.* case, however, the Supreme Court noted a trend toward accepting these clauses to give effect to the expectations of the parties in freely negotiated agreements if unaffected by fraud or undue influence.[35] The Supreme Court stated the defendant seeking to defeat a forum selection clause must clearly show "enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching."[36] In other words, to overcome the presumption that a forum selection provision is valid, a party must make "a showing of inconvenience so serious as to foreclose a remedy, perhaps coupled with a showing of bad faith, overreaching or lack of notice."[37]

That burden is a heavy one.[38] Broad and conclusory allegations of fraud without specific factual allegations or evidentiary support are insufficient to invalidate forum selection clauses.[39] An underlying principle of the relevant cases is

---

[34] *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 9 (1972). Though the *Bremen* case involved admiralty law, the application of the principle is not limited to admiralty cases. *Akesogenx Corp. v. Zavala,* 55 Kan. App. 2d 22 (Kan. Ct. App. 2017) (citations omitted).
[35] *Id*. at 12-13.
[36] *Id*. at 15.
[37] *Teran v. GB Int'l, S.P.A.,* 920 F. Supp. 2d 1176, 1183 (D. Kan. 2013) (citing *Bremen*, 407 U.S. at 10, 15, and *Riley v. Kingsley Underwriting Agencies, Ltd.*, 969 F. 2d 953, 957 (10th Cir. 1992)).
[38] *Riley*, 969 F.2d at 957.
[39] *Id*. at 960 (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 594 (1991) and *Spradlin v. Lear Siegler Mgmt. Servs.,* 926 F.2d 865, 868 (9th Cir. 1991)).

12

that it is the duty of every contracting party to learn and know the contents of a contract before signing it.[40]

The Debtors admit that generally, a forum selection clause is valid and enforceable unless the party seeking to invalidate it shows that enforcement would be unreasonable under the circumstances.[41] They assert in this case, however, the FSC "is so unfair and inconvenient that it, for all purposes, deprives [him] of a remedy or his day in court."[42] He states further that his allegations of overreaching and bad faith are sufficient to defeat the FSC, citing *Riley v. Kingsley Underwriting Agencies, Ltd.*[43] But in that case, the Tenth Circuit ruled the forum selection clause was enforceable. Riley, an American citizen, entered into an agreement with a British underwriter. The agreement provided the courts of England would have exclusive jurisdiction over any disputes. Riley filed an action in federal district court against the defendant for securities laws violations and fraud. The district court held the choice of forum provision was valid and enforceable. Riley appealed. The Tenth Circuit affirmed for several reasons: 1) the underwriting agreement reflected numerous contacts with the foreign forum; 2) Riley would not be deprived of his day in court though his remedies may be different or less favorable; 3) Riley never pleaded that the specific forum selection clause was obtained by fraud; and 4)

---

[40] *Commercial Credit Corporation v. Harris,* 212 Kan. 310, 314 (Kan. 1973).
[41] Doc. 28 at 7.
[42] *Id.* at 9.
[43] 969 F.2d 953 (10th Cir. 1992).

nothing in the record showed Riley would get anything other than a fair hearing in England.[44]

Here, the Debtors allege bad faith is shown by AuctionTime's failure to respond or meaningfully address Patmon's repeated requests to have the listing taken down prior to the sale of the misrepresented items.[45] They also contend "[a]fter ignoring reasonable requests for help, allowing harm through inaction, refusing to accept financial responsibility, and overreaching, demanding out-of-state litigation shows a clear pattern of bad faith."[46] In addition, the Debtors assert but for Sandhills' failures, a lawsuit brought against Patmon by one of the buyers at the auction would not have been brought.[47] These are conclusory, unsupported statements that are insufficient to render the FSC unenforceable.

The Debtors claim further, without supporting evidence, an out of state proceeding would cause Patmon undue hardship: travel expenses, extended time away from home and employment, the cost of engaging new attorneys, compelling witnesses to travel.[48] Under the *Bremen* standard, a showing of inconvenience is also insufficient to defeat a forum selection clause. Moreover, Patmon's personal inconvenience constitutes a private interest, a factor not generally considered when a forum selection clause is involved.

---

[44] *Id.*

[45] Doc. 28 at 10.

[46] *Id.* at 11.

[47] *Id.*

[48] *Id.* at 10.

14

The Debtors will not be deprived of their day in court – they can proceed with their claims against Barclay and Omaha Creek through this adversary proceeding. Additionally, Nebraska is not comparable to a foreign forum; while it may be inconvenient to cross the state line,[49] the Debtors have not asserted they would receive anything other than a fair trial there. The Debtors have failed to meet their burden to overcome the presumption of the FSC's validity.

### 2. The policy of centralization is not violated.

Courts have recognized the strong public policy favoring centralization of bankruptcy proceedings in a bankruptcy court.[50] This policy justifies the non-enforcement of a forum selection clause in the interest of justice and the public interest in providing debtors an orderly and expeditious rehabilitation.[51] Conversely, in the Tenth Circuit, "[b]ankruptcy courts should be reluctant to entertain questions which may be equally well resolved elsewhere."[52]

The Debtors argue public policy concerns justify the non-enforcement of the FSC, citing a section in the *Kurz* case[53] which lists a number of courts acknowledging the favorable policy of centralization. Notably, they omit the sentences immediately following the litany of cases: "However, the importance of

---

[49] The Court notes as an aside the distance from Patmon's residence to state court in Lancaster County is actually shorter than the distance from his residence to this Bankruptcy Court.
[50] *Kurz,* 464 B.R. at 640 (citing cases).
[51] *See Iridium*, 285 B.R. at 837; *Societe Nationale Algerienne Pour La Recherche, etc. v. Distrigas Corp.,* 80 B.R. 606, 610 (D.Mass.1987).
[52] *First State Bank & Trust Co. of Guthrie, Okla. v. Sand Springs State Bank of Sand Springs, Okla.,* 528 F.2d 350, 354 (10th Cir.1976).
[53] *Kurz,* 464 B.R. at 640.

centralization waxes and wanes with the characterization of the proceeding as either core or non-core. Consequently, the core and non-core distinction dictates enforceability of a forum selection clause."[54] The court in *Iridium* likewise articulated the importance of considering this distinction:

> Further, although there is a strong policy favoring the enforcement of forum selection clauses in this Circuit, this policy is not so strong as to mandate that forum selection clauses be adhered to where the dispute is core. "Transferring a core matter that is not 'inextricably intertwined' with non-core matters adversely impacts the strong public policy interest in centralizing all core matters in the bankruptcy court."[55]

It follows that enforcing a forum selection clause when the dispute is non-core would not violate the policy of centralization. As noted previously, since the Debtors' Claims are non-core, enforcement of the FSC would not violate this policy.

### 3. The Kansas Consumer Protection Act is inapplicable.

One of the purposes of the Kansas Consumer Protection Act (the "KCPA") is "to protect consumers from suppliers who commit deceptive and unconscionable practices."[56] The Debtors argue enforcement of the FSC violates this policy and the KCPA's waiver provision: "Except as otherwise provided in this act, a consumer may not waive or agree to forego rights or benefits under this act."[57] Although the Debtors do not expressly state this, we can infer they are contending

---

[54] *Id.* at 640-41 (internal citations omitted). *See also In re Exide Technologies*, 544 F.3d 196, 206 (3rd Cir. 2008) ("Whether claims are considered core or non-core proceedings dictates not only the bankruptcy court's rule and powers but also ... the enforcement of forum selection clauses.").
[55] *Iridium*, 285 B.R. at 836-37.
[56] Kan. Stat. Ann. § 50-623(b).
[57] Kan. Stat. Ann. § 50-625.

the FSC acts to waive their right to bring the action against Sandhills in a Kansas court under the KCPA's venue provision[58] – therefore, the waiver statute prevents the operation of the FSC.

This argument is flawed. The venue provision expressly applies to actions brought under the KCPA. As Sandhills points out, the Debtors' claims against Sandhills were not brought under the KCPA so the KCPA does not apply.

Indeed, the case the Debtors cite to support their position, *Kansas City Grill Cleaners, LLC v. BBQ Cleaner, LLC*,[59] actually supports Sandhills' position that the KCPA is inapplicable here. The plaintiff in that case entered into a contract with the defendant for the purchase of outdoor grill supplies. The contract included a forum selection clause providing that the venue for any resulting litigation was only proper in New Jersey. When a dispute arose, the plaintiff filed a petition in Kansas alleging the defendant *violated the KCPA* by engaging in a deceptive trade practice. The defendant moved to dismiss based on the forum selection clause and the district court dismissed the case. The plaintiff appealed. The court of appeals reversed: "[A] Kansas consumer's right to pursue *a KCPA action* in a Kansas venue is a right that

---

[58] The KCPA's venue provision states:

> Every action *pursuant to this act* shall be brought in the district court of any county in which there occurred an act or practice declared to be a violation of this act, or in which the defendant resides or the defendant's principal place of business is located. If the defendant is a nonresident and has no principal place of business within this state, then the nonresident defendant can be sued either in the district court of Shawnee county or in the district court of any county in which there occurred an act or practice declared to be a violation of this act.

Kan. Stat. Ann. § 50-638(b) (emphasis added).

[59] 57 Kan. App. 2d 542 (Kan. Ct. App. 2019).

may not be waived. And allowing the parties' forum-selection clause to eliminate this right in violation of K.S.A. 50-625(a) would contravene Kansas public policy.[60]

The Debtors' Claims were not brought under the KCPA. The first time the Debtors even mentioned the statute was in their Objection to the Motion. Thus, the FSC cannot violate the KCPA because it does not apply to the Debtors' Claims.

## III.  Conclusion

Forum selection clauses are enforced in all but the most exceptional cases. This case is not exceptional. The Debtors have not satisfied their burden to overcome the presumption of the FSC's validity, nor have they demonstrated that enforcement of the FSC violates public policy. Accordingly, the Motion is granted. The Debtors' Claims in their Third-Party Complaint against Sandhills are hereby dismissed and Sandhills is dismissed as a third-party defendant.[61]

**It is so ordered.**

**###**

---

[60] *Id.* at 553 (emphasis added). *See also K.R.W. Construction, Inc. v. Stronghold Eng'g, Inc.*, 598 F. Supp.3d 1129, n. 43 (D. Kan. 2022) (noting the *Kansas City Grill Cleaners* case involves a different statute than the one in this case and is thus irrelevant to the issue of the enforceability of the forum selection clause here).

Sandhills makes a secondary argument about the KCPA's inapplicability: Sandhills is exempt because § 50-635(a) provides the statute does not apply to "a publisher ... engaged in the dissemination of information or the reproduction of printed or pictorial matter so far as the information or matter has been disseminated or reproduced on behalf of others without actual knowledge that it violated the Kansas consumer protection act." This argument has merit given Sandhills only disseminates information posted on AuctionTime by its users and the Terms of Use expressly state Sandhills has no control over the content provided on its website. *See* Doc. 29 at 8.

[61] By this Order, Sandhills is not dismissed as a cross-defendant in this adversary proceeding. *See* Doc. 20 which is pending.