**SO ORDERED.**

**SIGNED this 2nd day of June, 2026.**



_Dale L. Somers_
Dale L. Somers
United States Chief Bankruptcy Judge

_Designated for online publication_
**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS**

|  |  |
|---|---|
| **In re:**<br><br>**Lane Andrew Patmon and Amy Elizabeth Patmon,**<br><br>    **Debtors.** | **Case No. 24-40496**<br>**Chapter 12** |
| **Agrifund, LLC,**<br><br>   **Plaintiff,**<br><br>**v.**<br><br>**Lane Andrew Patmon and Amy Elizabeth Patmon,**<br><br>   **Defendants.** | **Adversary No. 25-7018** |

Lane Andrew Patmon and Amy Elizabeth Patmon,

        Third-Party Plaintiffs,

v.

Sandhills Global, Inc. d/b/a AUCTIONTIME.COM, Omaha Creek Trailer Sales, Inc., and Beau Barclay,

        Third-Party Defendants.

Agrifund, LLC,

        Cross-Plaintiffs,

v.

Sandhills Global, Inc. d/b/a AUCTIONTIME.COM, Omaha Creek Trailer Sales, Inc., and Beau Barclay,

        Cross-Defendants.

## <u>Memorandum Opinion and Order Denying Sandhills' Motion to Dismiss Agrifund's Cross-Claims</u>

The plaintiff in this adversary proceeding filed a dischargeability complaint against Lane and Elizabeth Patmon (collectively, the "Debtors"). The Debtors subsequently filed a third-party complaint against Sandhills Global, Inc. d/b/a AuctionTime.com ("Sandhills" or "AuctionTime") and other parties. The plaintiff then filed a cross-complaint against the same parties. Sandhills moved to dismiss the cross-claims asserted against it. For the following reasons, the Court denies Sandhills' motion.

## I.     Background and Procedural History

In early February 2024, Lane Patmon ("Patmon") placed a call to AuctionTime's 1-800 phone number to discuss an internet auction sale of certain pieces of farm machinery and equipment. AuctionTime is an online auction platform that connects buyers and sellers of heavy machinery and equipment. A person at AuctionTime's main office then reached out to Beau Barclay ("Barclay"), a field representative and owner of Omaha Creek Trailer Sales, Inc. ("Omaha Creek"), directing him to respond to Patmon. Barclay contacted Patmon to set up a meeting and subsequently drove to Patmon's farm to discuss the details of the sale.

On or about February 21, 2024, Patmon and Omaha Creek entered into an Online Auction Listing & Marketing Agreement (the "Agreement"). Under the Agreement, Patmon authorized Omaha Creek to market and sell certain pieces of equipment. According to Patmon, he later advised Barclay about some misinformation in the online descriptions of the equipment, but Barclay did not remove the advertising.

In March 2024, an auction took place during which the listed items were sold to third party buyers and Barclay. Multiple disputes arose over the distribution of the sale proceeds and release of the equipment sold. Patmon and his wife filed their Voluntary Petition under Chapter 12 on July 23, 2024.

The Adversary Proceeding[1]

---

[1] Two other adversary proceedings related to the auction are pending in this bankruptcy case: Nos. 24-07011 and 24-07016.

On May 20, 2025, Agrifund, LLC ("Agrifund") filed a Complaint against the Debtors under § 523(a)(2), (a)(4), and (a)(6) to determine the dischargeability of the debt owed to Agrifund.[2] In 2023, the Debtors had executed a promissory note and loan agreement in favor of Agrifund. The loan was secured by the Debtors' farm products, inventory, equipment, and intangibles (subject to a few exceptions).[3] Agrifund contends the Debtors did not inform Agrifund of the auction sale nor did they obtain Agrifund's consent to release its liens on the auctioned equipment. Agrifund asserts a senior priority lien on the excess sale proceeds and argues the Debtors' conversion of Agrifund's collateral was done with fraudulent intent.

In their Answer, the Debtors deny most of the allegations and include a Third-Party Complaint[4] against Omaha Creek, Barclay, and Sandhills, bringing the following actions against them:

> Count I – Breach of Contract
> The Debtors assert Omaha Creek, Barclay, and AuctionTime breached the covenant of good faith and fair dealing when they misrepresented the condition of the machinery and failed to correct the advertising after Patmon brought it to their attention.

> Count II – Conversion
> The Debtors allege Omaha Creek and Barclay misappropriated the sale proceeds for their own use. They assert those actions were willful and committed with malice or reckless disregard for the rights of Patmon and his creditors. The Debtors contend AuctionTime is vicariously liable for the actions of Barclay and Omaha Creek.

---

[2] Doc. 1.

[3] The Debtors subsequently executed a modification agreement, assignment agreements and a subordination agreement in connection with the debt; those details are not relevant to the motion before the Court.

[4] Doc. 6.

<u>Count III – Breach of Fiduciary Duty</u>
The Debtors argue Omaha Creek and Barclay have commingled the sale proceeds with personal and/or business funds; the proceeds were trust funds and Omaha Creek and Barclay had a fiduciary duty to turn them over to Patmon and his creditors. They also claim AuctionTime is vicariously liable for the wrongful acts of Barclay and Omaha Creek.

On September 10, 2025, Agrifund filed a Cross-Complaint[5] against Omaha Creek, Barclay, and Sandhills (collectively, the "Cross-defendants"). Agrifund asserts several claims against the Cross-defendants, including: 1) conversion of the auctioned items and sale proceeds, 2) defalcation of their fiduciary responsibilities, 3) acting in bad faith by failing to search for existing liens on the property being sold, 4) larceny and 5) embezzlement.[6] Agrifund also contends AuctionTime is vicariously liable for the actions of Omaha Creek and Barclay, its agents.[7] Agrifund seeks judgment against the Cross-defendants, jointly and severally.

<u>Sandhills' Motion to Dismiss</u>

On October 10, 2025, Sandhills filed a motion to dismiss the Agrifund Claims against it and dismiss Sandhills as a Cross-defendant from this adversary proceeding (the "Motion").[8] Sandhills' position can be distilled into the following alternative arguments: 1) the Court lacks jurisdiction over Agrifund's claims against Sandhills because they fail to meet the "related to" standard under 28 U.S.C. §§ 157(c) and 1334, and 2) Agrifund's claims are subject to dismissal under

---

[5] Doc. 20.
[6] *Id*. at 10, 11.
[7] *Id*. at 11. The claims asserted by Agrifund against the Cross-defendants will be collectively referred to as the "Agrifund Claims."
[8] Doc. 27.

Fed. R. Civ. P. 12(b)(6) because Agrifund fails to state claims upon which relief can be granted.[9] Because the Court concludes dismissal is not appropriate based on the former, the Court need not address the latter in this Order.

## II.    Analysis

Bankruptcy judges are authorized to hear and determine all bankruptcy cases and "all core proceedings arising under title 11."[10] The term "core proceedings" is statutorily defined and includes matters concerning the administration of the estate.[11] A matter that has no existence outside of bankruptcy is a core proceeding.[12]

Bankruptcy courts also have jurisdiction over related proceedings.[13] While Congress did not delineate the scope of related to jurisdiction, its choice of words suggests a grant of some breadth.[14] The widely-accepted definition of a "related to" proceeding was articulated by the Third Circuit Court of Appeals in the *Pacor* case[15] and adopted by the Tenth Circuit Court of Appeals in the *Gardner* case.[16] Under this test, a "related to" proceeding is one where "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy."[17]

---

[9] *Id.* at 2. *See also* Brief attached to the Motion.
[10] 28 U.S.C. § 157(b)(1).
[11] 28 U.S.C. § 157(b)(2)(A)-(P).
[12] *Gardner v. United States* (*In re Gardner*), 913 F.2d 1515, 1518 (10th Cir. 1990).
[13] 28 U.S.C. §§ 157(a), 1334(b).
[14] *Celotex Corp. v. Edwards*, 514 U.S. 300, 307-08 (1995).
[15] *Pacor v. Higgins*, 743 F.2d 984 (3d Cir. 1984) (partially overruled on other grounds).
[16] *Gardner*, 913 F.2d at 1518.
[17] *Pacor,* 743 F.2d at 994. *See also In re Preston*, No. 18-41253, 2021 WL 560118, at *2 (Bankr. D. Kan. Feb. 8, 2021).

Further, "a proceeding is related to bankruptcy if an outcome could alter a debtor's rights, liabilities, options or freedom of action, thereby impacting the handling and administration of the bankruptcy estate."[18] A claim between two non-debtors that will potentially reduce the estate's liabilities produces an effect on the bankruptcy estate sufficient to confer "related to" jurisdiction under 28 U.S.C. § 1334(b).[19] On the other hand, the mere fact there may be common issues of fact between a civil proceeding and a controversy involving the bankruptcy estate does not bring the matter within the scope of the bankruptcy court's "related to" jurisdiction.[20]

Sandhills contends the Agrifund Claims are not sufficiently related to the Debtors' bankruptcy case to confer this Court's jurisdiction. Sandhills makes three arguments to support its position: 1) Agrifund fails to allege how its claims could affect, or have a significant impact on, the bankruptcy estate, 2) judicial efficiency will not be served by this Court's adjudication of the Agrifund Claims, and 3) this Court would be limited to submitting proposed findings of fact and conclusions of law because Sandhills does not consent to the Court's adjudication of the Agrifund Claims.[21]

---

[18] *Gardner*, 913 F.2d at 1518.
[19] *See In re Canion,* 196 F.3d 579, 585–87 (5th Cir.1999); *In re Celotex Corp.,* 124 F.3d 619, 626 (4th Cir.1997); *In re Kaonohi Ohana, Ltd.,* 873 F.2d 1302, 1306–07 (9th Cir.1989); *In re Titan Energy, Inc.,* 837 F.2d 325, 329 (8th Cir.1988); *In re Cornerstone Residential Dev. Corp.,* No. 97-52476C-7W, 2000 WL 33673770, at *2 (Bankr. M.D.N.C. Jan. 19, 2000).
[20] *Safeco Ins. Co. of America v. Farmland Indus., Inc.* (*In re Farmland Indus., Inc.*), 296 B.R. 793, 804 (B.A.P. 10th Cir. 2003).
[21] Doc. 27, Brief at 6-9.

Agrifund counters that the Court has "related to" jurisdiction over the Agrifund Claims because the claims have three effects on the Debtors' bankruptcy estate: 1) claim reduction, 2) resolution of co-obligor liability with Mr. Patmon, and 3) centralized resolution of interconnected claims.[22] Further, Agrifund asserts AuctionTime misapplies the "related to" standard under Tenth Circuit law. Finally, Agrifund argues judicial economy supports exercising this Court's jurisdiction.

Sandhills' argument that Tenth Circuit courts have "taken a narrow approach to the 'related to' test" is not borne out by the two authorities on which Sandhills relies or relevant caselaw.[23] In the *Mordini* case[24] cited by Sandhills, the issue was whether state law claims asserted against the debtor's wholly or partially owned affiliates were claims over which the bankruptcy court could exercise related to jurisdiction. The court concluded it did not have jurisdiction over the claims:

> Given the limits placed on the application of the broadly worded tests for "related to" jurisdiction, the Court believes that the economic effect of litigation on the value of a separate non-debtor entity in which a debtor owns an equity interest is insufficient to create such jurisdiction. This concept extends "related to" jurisdiction too far, potentially expanding the bankruptcy court's jurisdiction to any lawsuit involving any corporation in which the debtor owns stock.[25]

---

[22] Doc. 30 at 4, 5. Agrifund admits that its claims against Sandhills are non-core matters. Doc. 20 at 3.

[23] Doc. 27, Brief at 7.

[24] *LAR MHP Holdings, LP v. Mordini* (*In re Mordini*), 491 B.R. 567 (Bankr. D. Colo. 2013).

[25] *Id.* at 571.

The *Mordini* court relied, in part, on *Gardner*[26] to interpret the *Pacor* test more narrowly. In *Gardner*, however, the bankruptcy court held it was deprived of jurisdiction to determine competing creditors' claims to marital property when a state court's order in a divorce action divested the debtor of any interest in the property.[27] Neither *Mordini* nor *Gardner* stand for the proposition that the *Pacor* test for related to jurisdiction should be narrowly construed in all circumstances. In those cases, the connection between the claims asserted and the underlying bankruptcy estate were too tenuous. Such is not the case here. The Agrifund Claims do affect property of the Debtors' estate and could conceivably affect its administration.

The only other case Sandhills cites to support the narrow interpretation of the related to test is In *In re United Fruit & Vegetable, Inc.*,[28] in which the court held it lacked related to jurisdiction : "For a bankruptcy judge to have 'related to' jurisdiction over a proceeding, the outcome of the proceeding must affect the bankruptcy estate in some significant way."[29] But in that case, the funds at issue were not property of the bankruptcy estate and the claimant failed to demonstrate

---

[26] *Gardner v. United States* (*In re Gardner*), 913 F.2d 1515, 1518 (10th Cir. 1990).
[27] *Id.*
[28] *Rajala v. Guaranty Bank & Trust* (*In re United Fruit & Vegetable, Inc.*), 191 B.R. 445 (Bankr. D. Kan. 1996).
[29] *Id.* at 452-53. In its brief, Sandhills includes this quote and adds its own emphasis to "in some significant way." Doc. 27, Brief at 7. Notably, there was no discussion by the court in *United Fruit* as to what does or does not constitute a "significant way."

that possessing the funds would advance the administration of the estate in any material way.[30]

Moreover, courts in the Tenth Circuit and other circuits have routinely held a proceeding is sufficiently related to a bankruptcy case for purposes of satisfying the jurisdictional requirements if it affects the amount of property available for distribution among creditors.[31] As the *Pacor* court stated, an action is related to bankruptcy if it seeks to affect property of the estate or "would rearrange the standing of creditors."[32]

Sandhills contends the potential impact of the Agrifund Claims will not affect the bankruptcy estate in a "significant way" because they represent only 11% of the Debtors' secured debt and only 7% of the Debtors' overall debt.[33] By doing so, Sandhills is suggesting the test for related to jurisdiction requires that the effect on the administration of the estate be quantified -- that is, the reduction of a claim and

---

[30] *Id*. The *United Fruit & Vegetable* case is not compelling for another reason. The question before the court was whether it had core jurisdiction – the question of related to jurisdiction was effectively moot, but the court nevertheless stated, "I cannot resist a comment." *Id.*

[31] *See, e.g.*, *Luker v. Reeves* (*In re Reeves*), 65 F.3d 670, 675 (8th Cir. 1995) ("An action is related to the bankruptcy case if 'it affects the amount of property available for distribution or the allocaton of property among creditors.'") (citations omitted)); *Elscint, Inc. v. First Wisconsin Financial Corp. (Matter of Xonics, Inc.),* 813 F.2d 127, 132 (7th Cir.1987) (a link between the disposition of claims and the treatment of other creditors could confer related to jurisdiction); *Parks v. Consumer Law Assoc., LLC* (*In re Lewis*), 2010 WL 3905442, *2 (Bankr. Kan. Sept. 29, 2010) (an effect on the estate for purposes of related to jurisdiction may include a recovery of fees and damages that could increase the value of the estate to be administered by the Trustee and the distribution to unsecured creditors); *Commercial Financial Services, Inc. v. Jones* (*In re Commercial Financial Services, Inc*.), 251 B.R. 397, 402 (Bankr. N.D.Okla. 2000) ("[T]his proceeding is related to the bankruptcy case because its outcome may have an effect on the resources available for distribution to creditors of the estate.").

[32] *Pacor, Inc. v. Higgins*, 743 F.2d 984, n. 15 (3d Cir. 1984).

[33] Agrifund has filed an unsecured claim in the amount of $92,705.35 against the estate. *See* Claim No. 26.

resulting increased distribution to creditors must be a certain percentage or amount to have a "conceivable effect" on the estate. The Court is unwilling to read that requirement into the test nor does relevant case law support that interpretation.[34] The relevant point here is that a recovery from Sandhills would necessarily reduce Agrifund's claim in the bankruptcy case and impact distributions to other creditors – that constitutes a conceivable effect on the administration of the Debtors' estate.

In addition, Sandhills argues judicial efficiency will not be served by this Court's adjudication of the Agrifund Claims when the Debtors' claims against Sandhills might be adjudicated in a different forum.[35] As the Debtors point out, however, judicial efficiency *will* be served by having this Court exercise its jurisdiction vis-à-vis the Agrifund Claims because Agrifund has brought similar claims against the Debtors arising out of the same transaction that have yet to be resolved. This Court's resolution of co-obligor liability would be efficient and appropriate given this Court's familiarity with the Debtors' bankruptcy case and associated adversary proceedings. And while the Court acknowledges that the existence of common issues of fact alone is not sufficient to confer related to jurisdiction, the intertwining of parties and claims bolsters the conclusion that the Agrifund Claims are related to the underlying bankruptcy case.

---

[34] *See* fn. 31. Some courts articulate the potential amounts to be recovered, and those amounts can be substantial. However, a court's recognition of the potential (and sometimes sizeable) recovery does not equate to the imposition of a specified amount (or percentage) in order to meet the related to test.
[35] This Court granted Sandhills' motion to dismiss the Debtors' claims against it based on an enforceable forum selection clause requiring disputes to be litigated in Nebraska. *See* Doc. 64.

11

### III. Conclusion

For the foregoing reasons, the Agrifund Claims meet the related to jurisdictional test because the outcome of their adjudication could conceivably have an effect on the administration of this bankruptcy estate. Accordingly, this Court will exercise jurisdiction over the Agrifund Claims.[36] Sandhills' motion seeking dismissal of the Agrifund Claims against it and dismissal from this adversary proceeding is therefore denied.

The parties are directed to appear at a status conference set for July 16, 2026, at 9:30 a.m.

**It is so ordered.**

###

---

[36] Because the proceeding involving the Agrifund Claims is not a core proceeding and Sandhills does not consent to this Court's jurisdiction, the Court will be submitting proposed findings of fact and conclusions of law to the district court pursuant to 28 U.S.C. § 157(c)(1).